FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

13 AUG 12 PM 1:15

U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

RACHEL A. WHITAKER and
RICHARD L. DUNKIN, individually and
on behalf of all others similarly situated,

                 **Plaintiffs,**

        v.

APPRISS, INC.,

                 **Defendant.**

Case No. _____

## CLASS ACTION

## JURY TRIAL DEMANDED

3:13CV826

## CLASS ACTION COMPLAINT

Plaintiffs Rachel A. Whitaker and Richard L. Dunkin (referred to collectively,

"Plaintiffs," or individually as "Whitaker" and "Dunkin," respectively), bring this class action

complaint against Defendant Appriss, Inc. ("Appriss" or "Defendant"), individually and on

behalf of all others similarly situated (the "Class," as defined below), and complain and allege

upon personal knowledge as to themselves and their own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by their attorneys.

## I. NATURE OF THE ACTION

1.      This is a Class Action Complaint brought pursuant to the Driver's Privacy

Protection Act (the "DPPA"), 18 U.S.C. § 2721, *et seq*., against Appriss. Plaintiffs bring this

civil action on behalf of themselves and all others similarly situated whose "personal

information" is contained in any "motor vehicle record" (as defined in 18 U.S.C. § 2725(1) and

(3), respectively), which has been knowingly disclosed by Appriss to third parties without

Plaintiffs' "express consent" (as defined in 18 U.S.C. § 2725(5)) for use by such third parties for purposes not enumerated in 18 U.S.C. § 2721(b).

2.      Defendant offered for sale, and sold, motor vehicle accident reports to third parties who then used "personal information" contained in the reports to commercially solicit Plaintiffs and the other Class members.

3.      Due to Defendant's unauthorized disclosure of Plaintiffs' and the other Class members' "personal information," as defined by the DPPA, Plaintiffs seek relief on behalf of themselves and the other Class members for Defendant's violations of the DPPA, 18 U.S.C. § 2724(a).

## II.  JURISDICTION AND VENUE

4.      This is a civil action alleging Defendant's violation of 18 U.S.C. § 2721, *et seq.*

5.      This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

6.      This Court has personal jurisdiction over Appriss, a Delaware corporation, as it is registered with the State of Indiana as a for-profit foreign corporation and regularly transacts business within the State of Indiana.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), in that Appriss inhabits, transacts business, resides, is found, or has an agent in this District.

## III.  PARTIES

*Plaintiffs*

8.      Rachel A. Whitaker is a resident of Cass County, Indiana, which is located within the Northern District of Indiana, South Bend Division.

2

9.     Richard L. Dunkin is a resident of Cass County, Indiana, which is located within the Northern District of Indiana, South Bend Division.

**Defendant**

10.     Appriss is a corporation organized under the laws of the State of Delaware and is registered with the State of Indiana as a for-profit foreign corporation.

11.     Appriss bills itself as providing "technology solutions to help agencies keep communities safe and informed."  Its e-commerce site – www.buycrash.com – allows "parties involved in an accident to have the convenience option of buying their crash report online."

12.     What Appriss fails to disclose, however, is that not only does it sell the crash reports to "parties involved in an accident," but it also sells the crash reports to third parties, who then use the personal information contained in those crash reports to commercially solicit the accident victims.

## IV.  GENERAL ALLEGATIONS

**The DPPA**

13.     The DPPA was enacted by Congress due to concerns that personal information gathered by the States in the licensing of motor vehicle drivers was being released, and even sold, resulting in a loss of privacy.  Congress provided federal statutory protection to the privacy rights of motorists with the Driver's Privacy Protection Act of 1994. *See* 18 U.S.C. §§ 2721-2725.

14.     As enacted, the DPPA made it unlawful for any person or organization to obtain or disclose personal information derived from any motor vehicle record, unless the subject of the

3

information had authorized such disclosure or the request/disclosure qualified under a recognized exception as enumerated by 18 U.S.C. § 2721(b).

15.     Under the original version of the DPPA, the use of personal information for marketing activities was permitted, so long as the states provided individuals with the option to prohibit such disclosures.  This "opt out" provision effectively gave individuals the right to prohibit the states from disclosing personal information for marketing purposes.  *See* 18 U.S.C. § 2721(1993).

16.     In 1999, Congress amended the DPPA, eliminating the marketing "opt out" provision.  The use of personal information contained in motor vehicle records for "surveys, marketing or solicitations" is now permitted only "if the state has obtained the express consent of the person to whom such personal information pertains."  *See* 18 U.S.C. § 2721(b)(12).  Personal information may be obtained and used for any purpose, but only "if the requestor demonstrates it has obtained the express consent of the person to whom such personal information pertains."  *See* 18 U.S.C. § 2721(b)(13) (1999).  By changing the "opt out" exceptions of the 1993 DPPA to "opt in" exceptions in the 1999 DPPA, Congress significantly reduced the category of persons whose personal information may be lawfully obtained under the Act.  The effective date of the 1999 amendments to the DPPA was June 1, 2000.

17.     The DPPA creates a private right of action which may be enforced by enabling aggrieved individuals to sue persons who disclose their personal information in violation of the DPPA.  *See* 18 U.S.C. § 2724.

*Defendant's Business Model*

18.     Appriss, or its affiliates, predecessors or entities with which it has merged (*i.e.* Holt, Sheets & Associates and/or Open Portal Solutions, Inc.) built the software used by law enforcement agencies in at least seven states (Indiana, Illinois, Kentucky, Florida, Georgia, Texas, and New Jersey) to write and submit accident reports in a uniform style.

19.     Appriss, and its predecessors or entities with which it has merged, has made available – and continues to make available – to the general public through its e-commerce site, www.buycrash.com, accident reports from these seven states.

20.     Defendant's website, www.appriss.com, acknowledges that www.buycrash.com is its "e-commerce site."

21.     On the home page of the buycrash.com e-commerce site, Appriss prominently advertises itself as offering "electronic crash reports and subscription services."

22.     Appriss offers legal and medical professionals a subscription service to purchase accident reports.  The legal and medical professionals then use this subscription service to obtain batches of accident reports for purposes of direct mail solicitations or other marketing efforts.

23.     Upon information and belief, the third parties that sent the solicitation letters to Plaintiffs, copies of which are attached hereto as Exhibits 4, 5, 6, 7, 8, and 9, had previously obtained Plaintiffs' accident reports containing Plaintiffs' "personal information" directly from Appriss' e-commerce site, www.buycrash.com.

24.     The commercial solicitation letters received by Plaintiffs and other Class members were possible only because third parties had purchased accident reports containing

Plaintiffs' and other Class members' "personal information" directly from Appriss' e-commerce site, www.buycrash.com.

     25.    While Appriss was permitted under the DPPA to disclose "personal information" contained in accident reports for one of the fourteen purposes enumerated in the Act, *see* DPPA, 18 U.S.C. § 2721(b)(1)-(14), <u>selling accident reports that contain such "personal information" to third parties for the commercial solicitation of accident victims is not one of the permitted purposes</u>.

     26.    Section 2721(b) provides, in relevant part, that "personal information" may be disclosed as follows:

     (1)    For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.

     (2)    For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.

     (3)    For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only—

     (A) to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and

     (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.

(4)     For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5)     For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6)     For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7)     For use in providing notice to the owners of towed or impounded vehicles.

(8)     For use by any licenses private investigative agency or licensed security service for any purpose permitted under this subsection.

(9)     For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49 [*49 USCS §§ 31301* et seq.]

(10)    For use in connection with the operation of private toll transportation facilities.

(11)    For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12)    For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13)    For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14)    For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

7

## V.  PLAINTIFFS' EXPERIENCES

27.     Plaintiff Whitaker was involved in a motor vehicle collision on October 29, 2012. As a result of the collision, the responding officer from the City of Kokomo's Police Department prepared an Indiana Officer's Standard Crash Report.  A copy of the Indiana Officer's Standard Crash Report is attached hereto as Exhibit 1.[1]

28.     Plaintiff Dunkin was involved in a motor vehicle collision on June 8, 2013.  As a result of the collision, the responding officer from the Carroll County Sheriff's Department prepared an Indiana Officer's Standard Crash Report.  A copy of the Indiana Officer's Standard Crash Report is attached hereto as Exhibit 2.[2]

29.     At the scene of Plaintiff Dunkin's motor vehicle collision, the responding officer handed him a www.buycrash.com card, which provided information as to how to obtain a copy of the Indiana Officer's Standard Crash Report directly from the www.buycrash.com website.  A copy of the card is attached hereto as Exhibit 3.

30.     The Indiana Officers Standard Crash Report contains "personal information," as defined in 18 U.S.C. § 2725(3), including:  drivers' names, addresses, and drivers' license numbers.

31.     The DPPA-protected "personal information" included in the Indiana Officers' Standard Crash Report was obtained from Plaintiffs' driver's license and vehicle title information, both "motor vehicle records," maintained by the Indiana Bureau of Motor Vehicles.

---

[1] Plaintiff Whitaker's "personal information" protected by the DPPA has been redacted from Exhibit 1.

[2] Plaintiff Dunkin's "personal information" protected by the DPPA has been redacted from Exhibit 2.

8

32.     Approximately 30 days following the collision, Plaintiffs began receiving solicitation letters from law firms offering their services for any contemplated personal injury action.[3]

33.     Plaintiff Whitaker received a solicitation letter from the following law firm:

(a)     November 29, 2012 letter from Tom Blackburn, Esq. and R.T. Green, Esq. of Blackburn & Green.  It indicates that the letter is "Advertising Material" and makes reference to Plaintiff Whitaker's accident.  *See* Exhibit 4 attached hereto;

34.     As of the filing date of this complaint, Plaintiff Dunkin has received four solicitation letters from three law firms:

(a)     July 8, 2013 letter from Rodney Tucker, Esq. of Hausmann-McNally, P.C. It indicates that the letter is "Advertising Material" and makes reference to Plaintiff Dunkin's "recent auto accident." *See* Exhibit 5 attached hereto;

(b)     Undated letter from John Hensley, Esq. of Hensley Legal Group, P.C. It indicates that the letter is "Advertising Material" and makes reference to Plaintiff Dunkin's "recent auto accident." *See* Exhibit 6 attached hereto;

(c)     Undated follow-up letter from John Hensley, Esq. of Hensley Legal Group, P.C. It states that "[r]ecently we sent you some valuable information to inform you of your rights regarding your recent car wreck," provided enclosures including a "Frequently Asked Questions" brochure, encouraged him to "please call," and rhetorically asked "[w]hat have you got to lose?" *See* Exhibit 7 attached hereto; and,

(d)     Undated letter from Glaser & Ebbs. It indicates that the letter is "Advertising Material" and states that "our law firm learned that you were in an accident . . . ." *See* Exhibit 8 attached hereto.

---

[3] The solicitation letters Plaintiffs received were sent in conformity with Indiana's Rule of Professional Conduct Rule 7.3(b)(3). The aforementioned rule provides a 30 day moratorium during which attorneys cannot have direct contact or solicit perspective clients.

35.     Plaintiffs have never used the services of the law firms sending the solicitation letters and did not request that the materials be sent to them.  Rather, the communications received from the law firms were completely unsolicited by Plaintiffs.

36.     Plaintiff Whitaker, following her automobile collision, also received a direct solicitation from a chiropractor.

37.     The undated solicitation letter is from Dr. Joseph Hicks of Kokomo Chiropractic, P.C.  The letter states:  "Have You Been In An Auto Accident?  Don't settle with an insurance company until you've been evaluated for possible injuries and received the treatment you need!"  *See* Exhibit 9 attached hereto.

38.     Plaintiff Whitaker never used Dr. Hicks' services and did not request that the materials be sent to her.  Rather, the communication received from Kokomo Chiropractic, P.C. was completely unsolicited by her.

39.     The solicitation letters received by Plaintiffs and other Class members establish Appriss' various DPPA violations.  Indeed, the only way that Plaintiffs and other Class members could have received these unsolicited direct mail solicitations is if those soliciting entities purchased the accident reports containing "personal information" directly from Appriss.

## VII.  CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action individually and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> Each person, from August 8, 2009, through the date of judgment herein, whose "personal information" – obtained from a "motor vehicle record" – was knowingly disclosed by Appriss to a third party for commercial solicitation purposes or for any other purpose not permitted by 18 U.S.C. § 2721(b)(1)-(14).

(the "Class"). Excluded from the Class are persons who have authorized Appriss in writing (*i.e.* provided "express consent") to disclose to third parties their "personal information" for any purpose; Appriss and its subsidiaries, affiliates, predecessors and entities with which it has merged; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

41. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that their individual joinder herein is impracticable. The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by mail, Internet postings, and/or publication.

43. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, but are not limited to:

   (a) whether Defendant disclosed "personal information" from the "motor vehicle records" of Class members, within the meaning of the DPPA, 18 U.S.C. §§ 2725(3) and 2725(1), to third parties;

   (b) whether Defendant's disclosure of "personal information" from the "motor vehicle records" of Class members to third parties was done knowingly, within the meaning of the DPPA, 18 U.S.C. § 2724(a);

11

(c)     whether Defendant disclosed the personal information it obtained from Class members' motor vehicle records in a manner, or for reasons, not permitted under the DPPA, 18 U.S.C. § 2721.

44.     Defendant engaged in a course of conduct giving rise to the legal rights Plaintiffs seek to enforce on their own behalf and on behalf of the other Class members. Identical statutory violations and injuries are involved. Individual questions, if any, pale by comparison in both quality and quantity to the numerous common questions that predominate in this action.

45.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiffs.

46.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

47.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to

12

individually seek redress for Defendant's wrongful conduct. Even if the Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the Class members' claims, class treatment of this litigation will ensure that all claims and claimants are before this Court for consistent adjudication thereof and will be easily managed by the Court and the parties to this action.

## VIII.  CLAIM ALLEGED

### CIVIL ACTION UNDER DRIVER'S PRIVACY PROTECTION ACT 18 U.S.C. § 2724(a)

48.     Plaintiffs repeat, reallege, and incorporate by reference Paragraphs 1-47 of this Complaint as though fully stated herein.

49.     The DPPA prohibits the disclosure of personal information without the express (*i.e.* "written") consent of the person to whom such information applies, with the exception of certain, limited circumstances set forth in 18 U.S.C. § 2721(b)(1)-(14).

50.     None of the exceptions set forth in 18 U.S.C. § 2721(b) of the DPPA apply to the commercial solicitation of Plaintiffs and other Class members by legal and/or medical professionals.

51.     The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the Act

13

"shall be liable to the individual to whom the information pertains" and that individual "may

bring a civil action in a United States district court." *See* 18 U.S.C. § 2724(a).

52.     Pursuant to the DPPA, a "person" means an individual, organization, or entity, but

does not include a State or agency thereof. *See* 18 U.S.C. § 2725(2).

53.     Defendant meets the definition of a person in that it is an organization or entity,

and not a State or agency thereof. *See* 18 U.S.C. § 2725(2).

54.     Pursuant to the DPPA, "personal information" means information that identifies

an individual, including, but not limited to, "driver identification number, name [and] address."

*See* 18 U.S.C. § 2725(3).

55.     Defendant has, and continues to, knowingly disclose Plaintiffs' and other Class

members' personal information from motor vehicle records to third parties for their commercial

solicitation of Plaintiffs and other Class members.

56.     Pursuant to the DPPA, "express consent" means consent in writing. *See* 18

U.S.C. § 2725(5).

57.     Defendant has not obtained Plaintiffs' or any other Class member's written

consent prior to disclosing such personal information from motor vehicle records to third parties

for their commercial solicitation of Plaintiffs and other Class members.

58.     In doing so, Defendant acted in willful or reckless disregard of the DPPA.

59.     Each act of knowingly disclosing Plaintiffs' and other Class members' personal

information from motor vehicle records to third parties for a purpose not permitted under the

DPPA constitutes a separate violation of the DPPA by Appriss.

14

60.     Pursuant to the DPPA, the Court may award actual damages, but not less than liquidated damages in the amount of $2,500 for each violation; punitive damages upon proof of willful or reckless disregard of the law; reasonable attorneys' fees and other litigation costs reasonably incurred; and such other pecuniary and equitable relief as the Court deems appropriate. *See* 18 U.S.C. § 2724(b).

## IX.  REQUEST FOR RELIEF

WHEFEFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that this Court enter judgment on their behalf, and on behalf of all other Class members, and against Defendant, as follows:

a.     declaring that this action may be maintained as a class action;

b.     granting judgment in favor of Plaintiffs and all other Class members and against Defendant in the statutory amount of $2,500 for each instance in which Defendant knowingly disclosed personal information from a motor vehicle record to a third party in any manner not permitted under the DPPA;

c.     punitive damages should the Court find that Defendant acted in willful or reckless disregard of the DPPA;

d.     reasonable attorneys' fees and litigation costs incurred;

e.     an order enjoining Defendant from any future disclosure of personal information and requiring that it redact all personal information contained in accident reports prior to disclosing it to third parties; and

f.     all other relief that the Court determines to be appropriate.

15

## X.  JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: August 8, 2013

**STARR AUSTEN & MILLER, LLP**

By:

Andrew B. Miller
201 South Third Street
Logansport, Indiana  46947
Tel: (574) 722-6676
Fax: (574) 753-3299

Scott L. Starr
**STARR AUSTEN & MILLER, LLP**
201 South Third Street
Logansport, Indiana  46947
Tel: (574) 722-6676
Fax: (574) 753-3299

Adam J. Levitt
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
Tel: (312) 214-0000
Fax: (312) 214-0001

Brenda F. Szydlo*
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue, 29th Floor
New York, New York  10017
Tel: (646) 722-8500
Fax: (646) 722-8501

*Counsel for Plaintiffs and the Proposed Class*

\* *Pro Hac Vice* application to be submitted